IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAI HUYNH,

    Plaintiff,                      No. 2:09-cv-1979 CKD P

    vs.

CALLISON, et al.,

    Defendants.              <u>ORDER</u> <u>AND</u>

                                          <u>FINDINGS & RECOMMENDATIONS</u>

                            /

I. <u>Introduction</u>

        Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. The operative Second Amended Complaint (SAC) was served on four defendants. (Dkt. Nos. 24, 27.) Pending before the court is three defendants' motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on July 23, 2012.[1] (Dkt. No. 28.) Plaintiff has filed an opposition, and defendants have filed a reply. (Dkt. Nos. 35, 36.) For the reasons discussed below, the undersigned will recommend that defendants' motion be granted in part and denied in part.

---

[1] Defendants' counsel indicates that he has had no contact with the fourth defendant, Nelson, and does represent him at this time.

1

II. Background

As recounted in the court's March 15, 2012 order, plaintiff commenced this action on July 20, 2009 and on June 14, 2010 filed the SAC (Dkt. No. 10). Plaintiff claims that defendants violated his Eighth Amendment right to adequate medical care. He alleges that after he tested positive for latent tuberculosis in March 2006, defendants refused to properly administer a course of treatment to prevent him from developing active tuberculosis. He alleges that, as a result, he is at a high risk of developing active and multi-drug resistant tuberculosis.

On December 20, 2010, the previously-assigned magistrate judge determined at the screening stage that the SAC failed to state a claim upon which relief could be granted, as plaintiff did not allege that he had sustained any injury or was in immediate danger of injury. As plaintiff had consented to the magistrate judge's jurisdiction, the magistrate judge entered a judgment of dismissal. (Dkt. Nos. 12, 13.) Plaintiff appealed the judgment to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 14.)

On March 6, 2012, the Ninth Circuit reversed the judgment of dismissal, holding that, "[a]t this early stage of the proceedings, we cannot say that these allegations fail to state an Eighth Amendment injury." (Dkt. No. 17.) The Ninth Circuit cited Helling v. McKinney, 509 U.S. 25, 32-35 (1993), which held that an inmate stated an Eighth Amendment cause of action concerning his exposure to second hand smoke, which put him at risk of future damage to his health. (See Dkt. No. 19 at 3.)

This action was subsequently reassigned to this court. On March 15, 2012, in light of the Ninth Circuit's decision, the court ordered the SAC to be served on defendants Callison, Westin, Smith, and Nelson. (Dkt. No. 19.)

III. Defendants' Motion

Defendants Callison, Westin, and Smith first argue that the SAC fails to state a claim upon which relief may be granted against any of them. Defendants argue that plaintiff has not sufficiently alleged their involvement in the medical treatment of which he complains. They

2

also argue that, by refusing treatment as of October 25, 2006, plaintiff caused his own alleged injury of heightened risk of active TB.

Defendants alternatively argue that plaintiff has not exhausted his administrative remedies as to his claims. They argue that plaintiff's administrative complaint about his TB treatment was untimely, as he waited so long to file the complaint that the CDCR "had no opportunity to resolve Huynh's complaints before he abandoned his treatment and filed suit." (Dkt. No. 28-1 at 9-10.)

These arguments and plaintiff's responses are discussed below.

IV. Failure to State a Claim

A. Allegations

The SAC alleges as follows:

At all relevant times, defendant Callison was a Medical Technical Assistant (MTA) employed at High Desert State Prison. (SAC, ¶ 5.) Defendants Westin, Smith, and Nelson were correctional officers at HDSP. (Id., ¶¶ 7-9.)

On March 22, 2006, plaintiff was given a skin test for tuberculosis (TB), and tested positive. (Id., ¶¶ 12-13.) On April 13, 2006, plaintiff consented to a course of preventative drug treatment for TB. (Id., ¶ 14.) A non-defendant medical staffer told plaintiff that he would start the medication the following Tuesday and take it every Tuesday and Thursday for the next six months. (Id., ¶ 15.)

Plaintiff was given TB medication on April 18 and 20, but was not given any medication on April 25. (Id., ¶ 17.) That day, plaintiff told defendants Westin, Nelson, and Smith and unnamed MTAs that he had not received his medication that day, but they did nothing about it. (Id., ¶ 18.) Despite telling Nelson, Smith, and Westin numerous times that he had not received his medication, plaintiff was given medication only three or four more times during the months of April and May 2006. (Id., ¶ 19.)

\\\\\

Plaintiff continued to miss some of his scheduled doses in June and July 2006. (Id., ¶¶ 20-23.) On July 25, 2006, defendant Callison gave plaintiff his medication. Plaintiff told Callison that he had not received his TB medication on July 20, 2006. Callison told plaintiff that he was not working that day and that plaintiff was getting his medication now. (Id., ¶ 24.)

Plaintiff alleges that Callison was working on July 20, 2006. (Id.) In March 2008, plaintiff obtained a copy of his medical record concerning his TB treatment. (Id., ¶ 28.) Attached to the SAC is a medication log from HDSP noting that plaintiff was to receive the medications Pyridoxine and Isoniazid twice weekly. (Id. at 18.[2]) It has spaces for staff initials from April 2006 through January 2007. (Id.) Plaintiff alleges that he "discovered that on [all] of the days [he] did not receive TB meds Callison's initials was on it. Plaintiff did not receive TB meds on April 25 and 27, nearly [the] entire month of May, June 1, 13, and 15, July 20, October 12, 19, and 24." (Id., ¶ 28; see id., ¶ 25.) Plaintiff believes that, for at least 16 of 54 scheduled doses, Callison falsified the record to show that plaintiff was given his medication when he was not. (Id., ¶ 29.)

On October 25, 2006, an MTA came to deliver plaintiff's TB medication, but plaintiff refused. Plaintiff believes the MTA was Callison. (Id., ¶ 26.) Plaintiff asserts that he refused further doses because he "was not given the medication regularly and to continue an irregular treatment will only make the situation worse." (Id., ¶¶ 27, 30.)

Attachments to the SAC include a May 12, 2007 First Level Response to Appeal Log No. HDSP-D-07-0005, in which plaintiff asserted that he had been frequently denied his scheduled doses of TB medication. (Id. at 24-25.) The First Level reviewer noted that on November 14, 2006, a non-defendant nurse "offered to start your medication again" after plaintiff refused his medication on October 24, 2006. Plaintiff again refused to restart medication. The First Level reviewer concluded: "Your treatment appears incomplete by your own actions. (Id. at

---

[2] Citations refer to page numbers assigned by the court's docketing system.

25.)

Also attached is a September 4, 2007 Second Level Response to Appeal Log No. HDSP-D-07-0005, which denied his appeal on the same basis as the First Level Response. (Id. at 29-30.) In a Director's Level Appeal Decision dated December 21, 2007, the reviewer similarly found that plaintiff had refused treatment and denied plaintiff's appeal. (Id. at 32.)

B. Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's known serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000). To establish deliberate indifference, an individual defendant must have "purposefully ignore[d] or fail[ed] to respond to a prisoner's pain or possible medical need." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Id. at 1059. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Or. State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Furthermore, where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060. Mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

1  it must contain factual allegations sufficient to "raise a right to relief above the speculative
2  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain
3  something more...than...a statement of facts that merely creates a suspicion [of] a legally
4  cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure
5  § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter,
6  accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___
7  U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A
8  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
9  the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

\\\\\

C. <u>Discussion</u>

Defendants argue that plaintiff has failed to allege that correctional officers Smith and Westin were responsible for his missed doses. Plaintiff alleges that he told these defendants on April 25, 2006 and "numerous times" that he was "not getting the scheduled TB meds." (SAC, ¶¶ 18-19.) He alleges that Smith, Westin, and Nelson "did not attempt to call medical staffs to let them know that plaintiff did not receive his TB medication . . . [,] in effect causing plaintiff to miss many of his required doses." (SAC, ¶ 39.) Defendants point out that these correctional officers were not responsible for delivering medication and are unable to administer medication. However, construing plaintiff's general allegations in the light most favorable to him, the court will presume for purposes of this motion that Smith and Wesson had knowledge on several occasions that plaintiff was not receiving his prescribed medication for TB; that this inherently suggested that plaintiff was at risk of harm; and that defendants could have contacted medical staff in an attempt to address this problem, but did not.

Defendants also assert that plaintiff has failed to allege that Callison was responsible for 16 mixed doses between April 2006 and October 2006. While it is true that plaintiff alleges that non-defendant MTAs were responsible for some missed doses during that period, plaintiff also alleges that, on at least 16 occasions, Callison initialed a form saying he had dispensed plaintiff's TB medication when he had not. (SAC, ¶¶ 28-29.) Thus plaintiff sufficiently alleges a causal relationship between Callison and the complained-of harm.

Defendants also argue that, by refusing further doses of TB medication as of October 25, 2006, plaintiff has "engineered his own injury." In other words, he has not shown that the alleged deprivation was committed by a person acting under color of state law as required to state a claim under 42 U.S.C. § 1983. Defendants' argument has merit to the extent that plaintiff seeks to claim that his lack of TB treatment after October 25, 2006 subjected him to an unreasonable risk of harm. Because plaintiff voluntarily refused medication after that point, he cannot state a claim for damages based on his own actions. See <u>Rodriguez v. Briley</u>, 403 F.3d

952, 953 (7th Cir. 2005) (J. Posner) (inmate plaintiff cannot "engineer an Eight Amendment violation" by, e.g., skipping dinner every day).

However, insofar as plaintiff alleges that defendants' disregard of his medication schedule between April 13, 2006 and October 25, 2006 subjected him to an unreasonable risk of harm, plaintiff has sufficiently alleged injury by a state actor. In sum, the undersigned finds that the SAC states an Eighth Amendment claim against defendants Callison, Smith, Westin, and Nelson[3] concerning plaintiff's lack of TB treatment for the six-month period between April 25, 2006 and October 23, 2006.

V. Exhaustion of Remedies

The next question is whether plaintiff exhausted administrative remedies as to his claims.

A. Plaintiff's Grievances

Defendants assert in their motion that plaintiff did not file an inmate grievance about his TB treatment until December 11, 2006. (Dkt. No. 28-1 at 9.) Attached to the SAC[4], however, is an inmate appeal signed on October 30, 2006 in which plaintiff complains about his missed doses of TB medication.[5] (SAC at 26.) In an informal response issued November 14, 2006, the reviewer denied the grievance (which sought monetary compensation) and noted that plaintiff had refused further treatment. (Id.) The form is marked to indicate that it was returned to plaintiff on November 14, 2006. (Id.)

\\\\\

---

[3] The court includes defendant Nelson, although he did not join in the instant motion.

[4] Unusually, defendants did not submit any record of plaintiff's inmate appeals in support of their motion to dismiss for failure to exhaust administrative remedies. Rather, their arguments for non-exhaustion cite generally to the SAC and the Ninth Circuit's order of remand. (Dkt. No. 28-1 at 9-10.)

[5] In their reply, defendants acknowledge that plaintiff filed his first grievance on this issue in October 2006. (Dkt. No. 36 at 4.)

In his opposition, however, plaintiff asserts that, after he was interviewed on November 14, 2006, the appeal form "was never returned to plaintiff and was totally ignored." He disputes that it was sent to him through institutional mail. (Dkt. No. 35 at 4-5.)

Plaintiff filed a second appeal on this issue on December 11, 2006, which was given a Log Number of HDSP-D-07-00005, in which he stated that he had notified "block officers" and MTA staff that he was not receiving his TB medication. (SAC at 45.) As best the court can determine, the second page of this appeal is found on page 22 of the attachments to the SAC. It states in part: "Appellant ha[s] continued to try to get floor staffs and when possible MTA nurses to do something about appellant's TB meds but nothing was done." (Id. at 22.) Plaintiff requested compensation for medical expenses "if and when" he developed multi-drug resistant TB. The form is marked "Received" on September 24, 2007. (Id. at 45.)

Plaintiff filed a third appeal about his missed doses on February 25, 2007. It also was marked "Received" on September 24, 2007. (Id. at 40.)

Plaintiff filed a fourth appeal on March 11, 2007 stating that his November 2006 appeal "was never returned with a response, nor was appellant given a log number for it or a notice of when the appeal would be returned." Plaintiff requested to "know what happened to appellant's first appeal on this medical issue." Like the previous two appeals, this appeal was marked "Received" on September 24, 2007. (Id. at 37.)

From attachments to the SAC, it appears that only the December 2006 appeal, Log. No. HDSP-07-00005, progressed through the three formal levels of review. A First Level Response was issued on May 12, 2007.[6] (Id. at 24.) A Second Level Response was issued September 4, 2007. (Id. at 29.) A Director's Level Decision was issued on December 21, 2007,

---

[6] On August 1, 2007, plaintiff filed an inmate appeal stating that the Second Level Response to Log No. HDSP-07-0005 was past due. On August 16, 2007, the informal level reviewer responded: "Due to staff shortages and a significant increase in the number of appeals received by the Medical Department we have overdue appeals. We are attempting to rectify this backlog. Your appeal is not being ignored and we will process it as soon as possible. We apologize for this delay." (SAC at 44.)

"exhaust[ing] the administrative remedy available to the appellant within CDCR." (Id. at 32-33.)

In sum, it appears from the record that plaintiff filed his first inmate appeal five days after his October 25, 2006 refusal of TB medication. A response to this appeal may have been placed in the institutional mail in November 2006, but plaintiff never received it. Plaintiff filed three additional grievances on this issue, but did not receive timely responses due to an administrative backlog. One such appeal was eventually taken up on formal review and proceeded through the Director's Level.

B. Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). However, the exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117–19 (9th Cir. 2003) (failure to exhaust is an affirmative defense). Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense. Id. at 1119.

\\\\\

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones, supra, 549 U.S. at 218. In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested." Cal. Code Regs. tit. 15, § 3084.2(a). In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit Court of Appeals adopted the standard enunciated by the Seventh Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Thus, in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

\\\\\

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219. It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant. "[A]t an irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).

C. Discussion

Defendants argue that plaintiff did not timely exhaust his administrative remedies because he waited until after he refused medication to file an appeal about his missed doses. They assert that "[t]he constitutional violation, and trigger for filing a 602, is the denial of medication, and not when Plaintiff voluntarily began refusing medication on October 25, 2006." (Dkt. No. 36 at 4.)

Under 15 Cal. Code Regulations section 3084.8, an inmate appeal is timely if it is submitted within 30 calendar days of "[t]he occurrence of the event or decision being appealed." Plaintiff alleges he did not receive numerous scheduled doses over a six-month period, including on three occasions in October 2006. His last alleged missed dose was on October 24, 2006. He refused further medication on October 25, 2006 and filed his first inmate appeal on October 30, 2006. As plaintiff received no response to this appeal, he filed another one in December 2006, which – due to an administrative backlog – did not result in a Director's Level decision until December 2007.

Based on the foregoing record, the court concludes that defendants have not carried their burden to show that plaintiff failed to exhaust administrative remedies. Thus they are not entitled to the  dismissal of claims on this ground.

\\\\\

1  Accordingly, IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

IT IS HEREBY RECOMMENDED that defendants' July 23, 2012 motion to dismiss (Dkt. No. 28) be:

A. Granted to the following extent: Plaintiff's claims against all remaining defendants are limited to the period of time between April 13, 2006 and October 25, 2006; and

B. Denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 29, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
huyn1979.mtd