UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAI HUYNH,

          Plaintiff,

    v.

SUSAN HUBBARD, et al.,

          Defendants.

No.  2:09-cv-1979 MCE CKD P

FINDINGS AND RECOMMENDATIONS

I. Introduction

      Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  This action proceeds on the Second Amended Complaint (SAC) filed June 14, 2010, in which plaintiff alleges that four defendants at High Desert State Prison were deliberately indifferent to his serious medical needs by failing to provide him with numerous doses of his tuberculosis (TB) medication between April and October 2006.  (See ECF No. 47 at 2.)  Plaintiff alleges that, as a result of these multiple missed doses, he is at greater risk of developing either active TB or drug-resistant TB.  Pending before the court is defendants' August 21, 2013 motion for summary judgment (ECF No. 51), which has been briefed by the parties (ECF Nos. 59, 64).  For the reasons discussed below, the undersigned will recommend that defendants' motion be granted.

////

1

1    II. <u>Summary Judgment Standards Under Rule 56</u>

2          Summary judgment is appropriate when it is demonstrated that there "is no genuine

3 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4 Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

5 "citing to particular parts of materials in the record, including depositions, documents,

6 electronically stored information, affidavits or declarations, stipulations (including those made for

7 purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R.

8 Civ. P. 56(c)(1)(A).

9          Summary judgment should be entered, after adequate time for discovery and upon motion,

10 against a party who fails to make a showing sufficient to establish the existence of an element

11 essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u>

12 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

13 essential element of the nonmoving party's case necessarily renders all other facts immaterial."

14 <u>Id.</u>

15          If the moving party meets its initial responsibility, the burden then shifts to the opposing

16 party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita</u>

17 <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the

18 existence of this factual dispute, the opposing party may not rely upon the allegations or denials

19 of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

20 and/or admissible discovery material, in support of its contention that the dispute exists or show

21 that the materials cited by the movant do not establish the absence of a genuine dispute. <u>See</u> Fed.

22 R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the

23 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

24 governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv.,</u>

25 <u>Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

26 genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

27 party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

28 /////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

III.  Analysis

A.  Facts

The following facts are undisputed except where otherwise indicated[1]:

At all relevant times, plaintiff was incarcerated at High Desert State Prison (HDSP).  Defendants Nelson, Smith, and Westin were employed as correctional officers at HDSP; defendant Callison was a Medical Technician Assistant (MTA).  (DUF 1-3.)

---

[1] See ECF No. 51-2 (Defendants' Statement of Undisputed Facts).  Plaintiff's "Statement of Disputed Facts" does not cite to portions of the record to establish material factual disputes, as required by Local Rule 260(b).  (ECF No. 60 at 1-5.)  However, a plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence.  Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000).

1    As context for plaintiff's factual allegations, the court begins with an overview of TB

2    diagnosis and treatment.

3         1.  Diagnosis and Treatment of Tuberculosis

4         TB is a disease, primarily of the lungs, caused by a bacterium called *Mycobacterium*

5    *tuberculosis*.[2]  Under the California Department of Corrections and Rehabilitation's (CDCR's)

6    TB evaluation program, all inmates in state custody are required to be evaluated for TB.  (DUF

7    34.)  The most common test for infection is the TB skin test (TST).  A positive result occurs when

8    immune cells react to the TB protein.  A positive result can occur if someone is currently infected

9    with TB, if they are infected with atypical mycobacteria, or if they previously received a TB

10   vaccine.  A TST cannot differentiate between active or latent TB.  (DUF 35.)  Once an inmate has

11   a positive TST, they are commonly given a chest x-ray to determine whether the patient has an

12   active infection.  (DUF 36.)

13        The treatment of active TB and latent TB differs significantly.  The initial treatment for

14   active TB is a regimen of a combination of four or more medications. (DUF 43.)  It is important

15   that patients with an active infection finish the treatment and take the drugs exactly as prescribed.

16   Patients with active TB have a risk of developing drug-resistant strains of bacteria if they are

17   administered only a single drug, or stop treatment early.  (DUF 44.)

18        The risk of developing drug-resistant TB exists only in patients with active TB.  (DUF

19   50.)  When a patient has active TB, the bacteria is actively multiplying.  Each time one of the

20   bacterium multiplies, there is a random chance that a new bacterium will result in a mutation.

21   Occasionally, a mutation will result in a drug-resistant version.  (DUF 45.)  If a patient with

22   active TB stops taking the medication too soon, some of the multiplying bacteria may survive,

23   and this may result in a predominance of TB strains that are resistant to the medication.  (DUF

24   46.)  Because active TB is treated with a combination of medications, when patients terminate the

25   drug prematurely, there is a risk of developing the more serious multi-drug-resistant TB (MDR

26   
---
[2] Undisputed medical facts are taken from the declaration of Dr. J. Mohle-Boetani, the Deputy
27   Medical Executive for Public Health at California Correctional Health Care Services.  Dr. J.
     Mohle-Boetani has not personally examined plaintiff, but has reviewed his medical records from
28   January 2006 to the present.  (ECF No. 51-4.)

TB).  (DUF 49.)

In contrast, patients with latent TB do not have an ongoing disease process.  They have inactive bacteria, meaning the bacteria is not multiplying.  (DUF 51.)  The treatment for patients with latent TB is preventative, meaning it is intended to prevent reactivation of the bacteria.  (DUF 51.)  Because there is no multiplication, latent TB can be safely treated with a single medication, such as Isoniazid (INH), commonly used to treat TB over the course of a nine-month regimen.  (DUF 40, 54.)  Because INH treatment may lead to a deficiency of vitamin B6, it is commonly administered with vitamin B6 supplements.  (DUF 42.)

There is a zero percent probability that an incomplete INH treatment of latent TB will cause the development of a drug-resistant strain, because the bacteria are not multiplying.  (DUF 53.)  Nor does missing doses of INH treatment for latent TB increase the risk of developing active TB.  (DUF 55.)  For patients with latent TB, an incomplete INH regimen can be corrected by a subsequent complete regimen.  Thus if a patient with latent TB is unable to complete one nine-month treatment, the proper course of action is to begin and complete a new course of treatment.  (ECF No. 56.)

2.  Plaintiff's Treatment at HDSP

On January 26, 2006, plaintiff had a chest x-ray to test for active TB.  According to the radiologist's notes, plaintiff had previously tested positive in a PPD skin test.  The result of the chest x-ray was negative for active TB.  (DUF 57; ECF No. 51-3 at 7[3].)

On April 13, 2006, plaintiff signed a consent form for a course of drug treatment for latent TB.  (DUF 58; ECF No. 51-3 at 8.)  The next day, a physician at HDSP ordered a nine-month regimen of INH and vitamin B6.  (DUF 59; ECF No. 51-3 at 9.)  On April 30, 2006, plaintiff had a second chest x-ray, which was also negative for active TB.  (DUF 61; ECF No. 51-3 at 11.)

Plaintiff alleges that he was not given his scheduled doses of TB medication "for at least 16 times out of approximately 54 times" he was due to receive it.   (SAC ¶ 29.)  He alleges that, despite telling defendants Westin, Nelson, and Smith about this problem "numerous times," he

_____

[3] Record citations refer to page numbers assigned by the court's docketing system.

5

did not receive all his scheduled doses in April and May 2006.  (SAC ¶ 18.)  Plaintiff further

alleges that, although defendant Callison failed to give plaintiff his scheduled medication 16

times, he "initialed all of those days stating that he ha[d] given Plaintiff his TB meds" – i.e., that

Callison falsified plaintiff's medical records.  (SAC ¶ 24.)  Plaintiff's Medical Administration

Report (MAR) indicates that he received INH (300 mg) and vitamin B6 (50 mg) twice weekly

from April 18, 2006 until November 7, 2006.  (DUF 64; ECF No. 51-3 at 5.)

On October 24 or 25, 2006, plaintiff refused to take the TB medication offered.  (SAC ¶ 26, DUF 65.)  Plaintiff refused medication again on October 31, November 2, and November 7, 2006.  Plaintiff did not accept any further INH or complete the prescribed treatment.  (DUF 65.) Plaintiff explains that his "decision to discontinue the medication was because plaintiff was not given the medication regularly and to continue an irregular treatment will only make the situation worse." (SAC ¶ 26.)  He asserts that, as a result of defendants' actions, he "is now at high risk of developing multi-drug resistant tuberculosis . . . [and] 'active' tuberculosis."  (SAC ¶ 35.)

Plaintiff's TB score was re-evaluated in March 2007, April 2008, April 2009, March 2010, October 2010, and April 2012.  (DUF 70.)  At his 2007 and 2009 examinations, his lung sounds were clear.  (DUF 72.)  In his 2010, 2011, and 2012 examinations, he had no symptoms of active TB.  (DUF 73.)  Plaintiff has never been diagnosed with active or drug-resistant TB.  (DUF 74, 80.)  Defendants' medical expert estimates that he currently has a 2.5-5% probability of developing an active TB infection during his lifetime[4], which could be eliminated if he agreed to complete a course of treatment for latent TB.  (DUF 76.)

Plaintiff is not currently housed at HDSP.  (DUF 83.)

B. Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d

---

[4] This is based on a determination that plaintiff was exposed to TB as early as 1989-1992, while at the Santa Clara County Juvenile Detention Center.  (DUF 75.)

1    1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

2    Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

3         In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439

4    F.3d at 1096.  First, the plaintiff must show a "serious medical need" by demonstrating that

5    "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary

6    and wanton infliction of pain.'"  Id., citing Estelle, 429 U.S. at 104.

7         Second, the plaintiff must show the defendant's response to the need was deliberately

8    indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act

9    or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

10   indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from

11   which the inference could be drawn that a substantial risk of serious harm exists," but that person

12   "must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "subjective

13   approach" focuses only "on what a defendant's mental attitude actually was."  Id. at 839.

14        A showing of merely negligent medical care is not enough to establish a constitutional

15   violation.  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-

16   106.  A difference of opinion about the proper course of treatment is not deliberate indifference,

17   nor does a dispute between a prisoner and prison officials over the necessity for or extent of

18   medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d

19   1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore,

20   mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate

21   medical indifference."  Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

22   1985).  Where a prisoner alleges that delay of medical treatment evinces deliberate indifference,

23   the prisoner must show that the delay caused "significant harm and that Defendants should have

24   known this to be the case."  Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

25        The United States Supreme Court has held that prison officials can be held liable under 42

26   U.S.C. § 1983 for showing deliberate indifference to an inmate's unreasonable risk of future

27   medical harm.  Helling v. McKinney, 509 U.S. 25, 35 (1993).  To succeed on such a claim, a

28   plaintiff must establish "both the subjective [deliberate indifference] and objective elements

7

1   necessary to prove an Eighth Amendment violation."  Id.  With respect to the objective factor, the

2   Court continued, determining whether a prisoner's conditions of confinement violates the Eighth

3   Amendment

4         requires more than a scientific and statistical inquiry into the
          seriousness of the potential harm and the likelihood that such injury
5         to health will actually be caused by [the complained-of condition].
          It also requires a court to assess whether society considers the risk
6         that the prisoner complains of to be so grave that it violates
          contemporary standards of decency to expose anyone unwillingly to
7         such a risk. In other words, the prisoner must show that the risk of
          which he complains is not one that today's society chooses to
8         tolerate.

9   Id. at 36.

10  C.  Discussion

11          As a preliminary matter, the court notes that March 28, 2013, the district court granted in

12  part defendants' motion to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of

13  Civil Procedure, finding that plaintiff's refusal of TB medication after October 25, 2006 negated

14  any claim based on defendants' failure to treat him after that point.  Thus the current motion is

15  limited to the period between April 13, 2006 and October 25, 2006.  (ECF Nos. 39, 47.)

16          Plaintiff's allegations concerning this period are predicated on the assumption that an

17  inconsistent course of TB treatment can lead to the patient developing a drug-resistant form of the

18  disease.  Plaintiff does not claim to have, or have ever had, active TB.  Rather, he asserts that the

19  alleged missed doses of INH in 2006 put him at "heighten[ed] risk" of developing active TB and

20  multi-drug-resistant TB.  (SAC ¶ 35.)

21          Plaintiff's concerns are understandable.  However, the uncontested medical evidence on

22  summary judgment shows that a patient with latent TB can miss doses of preventative treatment

23  without being placed at increased risk of developing drug-resistant TB.  Indeed, defendants'

24  medical expert puts the risk of a latent TB patient developing MDR TB at zero.  The uncontested

25  medical evidence further shows that missing doses of INH treatment for latent TB does not

26  increase the risk of developing active TB.  The fact that plaintiff has been consistently tested for

27  active TB in the six years since 2006 and shown no symptoms of either active or drug-resistant

28  TB, supports this conclusion.

1    While the Supreme Court in <u>Helling</u> determined that a prisoner could, under some

2    circumstances, pursue a § 1983 claim for risk of future harm, the bar was set high, requiring a

3    court to "assess whether society considers the risk that the prisoner complains of to be so grave

4    that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."

5    509 U.S. at 36.  Here, there is no evidence that plaintiff was exposed to any such risk, even

6    assuming, <u>arguendo</u>, that defendants caused him to miss sixteen scheduled doses of INH between

7    April and October 2006.  Nor does plaintiff allege that he has, to date, suffered any tangible harm

8    as a result of defendants' actions.  <u>See</u> ECF No. 17 (reversing Rule 12(b)(6) dismissal and

9    remanding based on plaintiff's alleged risk of future harm under <u>Helling</u>).

10    To prevail on a deliberate indifference claim, a plaintiff's injury must be more than de

11    minimis.  <u>Oliver v. Keller</u>, 289 F.3d 623, 626-27 (9th Cir. 2002).  Because plaintiff has not raised

12    a genuine dispute of material fact as to whether he suffered injury – or is at risk of injury under

13    the <u>Helling</u> standard – as a result of defendants' actions, the undersigned will recommend that

14    summary judgment be granted for defendants.

15    Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary

16    judgment (ECF No. 51) be granted and this case closed.

17    These findings and recommendations are submitted to the United States District Judge

18    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days after

19    being served with these findings and recommendations, any party may file written objections with

20    the court and serve a copy on all parties.  Such a document should be captioned

21    "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

22    advised that failure to file objections within the specified time may waive the right to appeal the

23    District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

24    Dated:  March 7, 2014

25    _____
CAROLYN K. DELANEY

26    UNITED STATES MAGISTRATE JUDGE

27

28    2 / huny1979.sj

9